IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | |
|---|---|
| RACHEL CARLOTTA, | Case No. 1:24-cv-73 |
| Plaintiff, | Judge Matthew W. McFarland |
| v. | |
| HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI, et al., | |
| Defendants. | |

## ORDER AND OPINION

This matter is before the Court on Defendant Higher Education Loan Authority of the State of Missouri's Motion to Dismiss (Doc. 13) and the United States Department of Education's Motion to Dismiss (Doc. 35). Plaintiff responded in opposition to both motions (Docs. 26, 37) and each Defendant replied in support of their respective motions (Docs. 29, 38). Thus, this matter is ripe for review. For the reasons below, the United States Department of Education's Motion to Dismiss (Doc. 35) is **GRANTED**, and Higher Education Loan Authority of the State of Missouri's Motion to Dismiss (Doc. 13) is **GRANTED**.

## BACKGROUND

Plaintiff Rachel Carlotta is an Ohio resident and the mother of Defendant Alexus Sponseller. (Compl., Doc. 1, ¶¶ 1, 4.) From 2018 to 2020, Sponseller was a student at Bluffton University. (*Id.* ¶ 12.) To pay for her education, Sponseller allegedly engaged in

fraud by forging Plaintiff's name and signature to apply for and obtain federal student loans through Defendant United States Department of Education ("USDE"). (*Id.*) Plaintiff had no knowledge of these loan applications. (*Id.*) In total, Sponseller obtained four federal student loans totaling $22,761.00, plus interest and fees. (*Id.*)

In the summer of 2022, Plaintiff learned about the loans when Defendant Higher Education Loan Authority of the State of Missouri Inc. ("MOHELA"), a federal loan servicer, and USDE began reporting the loans on Plaintiff's credit report. (Compl., Doc. 1, ¶¶ 2, 13.) After this discovery, Plaintiff contacted Sponseller, who admitted her fraudulent conduct. (*Id.* ¶ 13.) Plaintiff then submitted declarations of fraud and loan discharge applications with MOHELA and USDE for Sponseller's loans. (*Id.* ¶ 14.) Plaintiff also filed an identity theft and fraud report with local police. (*Id.*) And, Plaintiff submitted Consumer Dispute Verifications with the three major credit reporting agencies: Defendants Experian, Trans Union, and Equifax. (*Id.* ¶¶ 5-8, 14.) Plaintiff provided the three agencies with records and evidence that the loans were fraudulently obtained and should be removed from her reports. (*Id.* ¶ 14.) Plaintiff alleges that the loans remain on her credit reports from all three agencies. (*Id.* ¶ 15.)

In her Complaint, Plaintiff brought claims under the Fair Credit Reporting Act ("FCRA") against Experian, Trans Union, and Equifax for violations of 15 U.S.C. §§ 1681e(b), 1681i(a)(1), and against MOHELA and USDE for violations of 15 U.S.C. § 1681s-2(b). She also brought claims of fraud and identity theft against Sponseller under common law and Ohio Revised Code §§ 2913.49(J), 2307.60. Finally, Plaintiff sought a declaratory judgment finding that Plaintiff is not liable for any loans with MOHELA and

2

USDE.

On May 21, 2024, Plaintiff voluntarily dismissed her claims against Trans Union. (Doc. 28.) On June 13, 2024, Plaintiff and USDE stipulated to the dismissal without prejudice of Plaintiff's FCRA claims against USDE. (Doc. 30.) This Court, construing the stipulation as a motion, granted the dismissal. (Doc. 32.) On July 10, 2024, Plaintiff and Experian stipulated to the dismissal with prejudice of all claims against Experian. At this time, Plaintiff's remaining claims are: (1) an FCRA claim against Equifax for violations of 15 U.S.C. §§ 1681e(b) and 1681i(a)(1); (2) an FCRA claim against MOHELA for violations of 15 U.S.C. § 1681s-2(b); (3) identity theft and fraud claims against Sponseller under common law and Ohio Revised Code §§ 2913.49(J), 2307.60; and (4) declaratory judgment against MOHELA and USDE.

MOHELA and USDE both filed Motions to Dismiss (Doc. 13, 35) the remaining claims against them. The Court will address each motion in turn.

## LAW & ANALYSIS

A Rule 12(b)(6) motion to dismiss for failure to state a claim tests a plaintiff's cause of action as stated in a complaint. *Golden v. City of Columbus*, 404 F.3d 950, 958 (6th Cir. 2005); Fed. R. Civ. P. 12(b)(6). A claim for relief must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts accept all factual allegations as true and construe them in the light most favorable to the plaintiff. *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018). However, courts are not bound to do the same for a complaint's legal conclusions. *Twombly*, 550 U.S. at 555. And, when a complaint contains sufficient facts to satisfy the elements of an affirmative defense put forth by a defendant, courts may grant

3

dismissal on that basis. *Est. of Barney v. PNC Bank, Nat. Ass'n*, 714 F.3d 920, 926 (6th Cir. 2013).

## ANALYSIS

The Court will first address USDE's Motion to Dismiss (Doc. 35) and then will turn to MOHELA's Motion to Dismiss (Doc. 13).

### I. Department of Education's Motion to Dismiss

In its Motion, USDE first argues that the Court lacks subject matter jurisdiction over the remaining declaratory judgment claim. (Doc. 35, Pg. ID 175.) In the alternative, it argues that Plaintiff has failed to state a claim for relief as Plaintiff has failed to identify an applicable waiver of sovereign immunity. (*Id.* at Pg. ID 177.)

Addressing the preliminary question of jurisdiction, Plaintiff cannot bring her claims into federal court under diversity jurisdiction, as both she and Sponseller are Ohio residents. (Compl., Doc. 1, ¶¶ 1, 4.) Accordingly, Plaintiff's claims must "arise under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. USDE points out that Plaintiff's only remaining cause of action against it falls under the Declaratory Judgment Act. (Motion, Doc. 35, Pg. ID 175.) This Act states that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). Importantly, the Act requires an actual controversy and does not "create an independent basis for federal subject matter jurisdiction." *Id.*; *see also Heydon v. MediaOne of Se. Michigan, Inc.*, 327 F.3d 466, 470 (6th Cir. 2005). Rather, the Court "must have jurisdiction already under some other federal statute," before Plaintiff can invoke

4

the Declaratory Judgment Act. *Toledo v. Jackson,* 485 F.3d 836, 839 (6th Cir. 2007).

As USDE points out, courts routinely dismiss actions brought under the Declaratory Judgment Act when no other private cause of action exists. *See, e.g., Davis v. United States,* 499 F.3d 590, 594 (6th Cir. 2007); *Michigan Corr. Org. v. Michigan Dep't of Corr.,* 774 F.3d 895, 907 (6th Cir. 2014). In fact, this Court has dismissed actions when the plaintiff had initially brought several claims, but only the claim for declaratory relief remained when the defendant moved for dismissal. *See, e.g., Tunnel Hill Reclamation LLC v. Endurance Am. SpecialtyIns. Co.,* No. 2:15-CV-2720, 2017 WL 11635002, at *2 (S.D. Ohio June 28, 2017); *Sayyah v. Yeager,* No. 1:04-CV-395, 2005 WL 1705041, at *1 (S.D. Ohio July 20, 2005).

Similarly, Plaintiff has dismissed its FCRA claim against USDE, so that only the claim arising under the Declaratory Judgment Act remains. (Motion, Doc. 35, Pg. ID 175.) Plaintiff argues that the Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1346, as her claim arises out of a contractual dispute involving USDE—a governmental agency. (Response, Doc. 37, Pg. ID 186.) But, Plaintiff cites no legal authority as a basis for this argument. (*Id.*) Indeed, 28 U.S.C. § 1331 still requires a federal question to form the basis of her claim, and, as established above, a claim under the Declaratory Judgment Act alone is not sufficient. Furthermore, 28 U.S.C. § 1346, known as the Little Tucker Act, provides federal question jurisdiction for any claim against the United States that does not exceed $10,000 in damages. 28 U.S.C. § 1346(a)(2). As USDE points out, the loans at issue totaled $22,761.00, before interest and fees. (Compl., Doc. 1, ¶ 12; *see also* Reply, Doc. 38, Pg. ID 190.) And, the Little Tucker Act can only confer jurisdiction over actions for

5

money judgments, not actions for declaratory judgment. *Seiden v. United States*, 537 F.2d 867, 870 (6th Cir. 1976); *Lee v. Thornton*, 420 U.S. 139, 140 (1975). Thus, the Little Tucker Act cannot form the basis of Plaintiff's claim against USDE. Without another private cause of action against USDE, this Court does not have subject matter jurisdiction over USDE, pursuant to 28 U.S.C. § 1331. The Court, therefore, must dismiss the declaratory judgment claim against USDE without prejudice.

As Plaintiff's remaining claim against USDE must be dismissed for lack of subject matter jurisdiction, the Court does not analyze USDE's alternative basis for dismissal, failure to state a claim for relief.

## II. MOHELA's Motion to Dismiss

MOHELA also moved to dismiss Plaintiff's two remaining claims against it. (Motion, Doc. 13.) In support of its Motion, MOHELA argues that it is an arm of the State of Missouri, and thus protected by sovereign immunity under the Eleventh Amendment. (*Id.* at Pg. ID 47.) MOHELA primarily relies on the Supreme Court's recent decision in *Biden v. Nebraska*, 143 S. Ct. 2355 (2023). (Motion, Doc. 12, Pg. ID 52.) Alternatively, MOHELA argues it is an arm of the state under the Sixth Circuit's four prong test. (*Id.* at Pg. ID 53.) The Court will consider each argument.

### a. Effect of *Biden v. Nebraska*

In its recent decision on the Biden administration's student loan forgiveness program, the Supreme Court contemplated MOHELA's status as an arm of the State of Missouri. *Biden*, 143 S. Ct. at 2366. The Court concluded that the State of Missouri had standing to sue after determining that MOHELA was an "instrumentality of Missouri"

harmed by the program. (*Id.* at 2366-67.)

MOHELA extrapolates the Supreme Court's determination in *Biden* to show its status as an arm of the state in the matter at hand. (Motion, Doc. 13, Pg. ID 52.) Plaintiff, in response, argues that the Supreme Court's decision related to Missouri's standing and did not declare MOHELA an arm of the state for purposes of sovereign immunity. (Response, Doc. 26, Pg. ID 119.) In support, Plaintiff cites to *Pellegrino v. Equifax Info. Servs., LLC*, 709 F.Supp.3d 206 (E.D. Va. Jan. 2, 2024), a non-binding decision. (*Id.*) In *Pellegrino*, the court concluded that the Supreme Court's determination in *Biden* "does not resolve the question of whether MOHELA is entitled to Eleventh Amendment immunity." 709 F. Supp.3d at 212. Rather, according to the district court, sovereign immunity requires "an analysis into the extent of an entity's relationship with a state," not just that the relationship exists. *Id.*

However, MOHELA contends that the court in *Pellegrino* was wrong. (Reply, Doc. 29, Pg. ID 148.) According to MOHELA, the District Court for the Eastern District of Virginia "overlooked that standing derives from Article III of the U.S. Constitution," and that the Eleventh Amendment "modifies Article III by prohibiting federal courts from hearing certain lawsuits against States (or arms of the State) in federal court." (*Id.* at Pg. ID 149.) In other words, the doctrines of standing and sovereign immunity derive from the same part of the Constitution. (*Id.*) Thus, the inquiries into whether an entity is an arm of the state for purposes of both doctrines have "many common threads." (*Id.*)

The Court agrees that the inquiries of whether an entity is an arm of the state for purposes of sovereign immunity and standing share several commonalities. Still, the

analyses are distinct. The Tenth Circuit recently contemplated whether *Biden* resolved the issue of MOHELA's status as an arm of the state in the sovereign immunity context. *Good v. Dep't of Educ.*, 121 F.4th 772, 796 (10th Cir. 2024). In *Good*, the court concluded that, while relevant, *Biden* only showed that MOHELA and the state were interconnected, not that they were "so interconnected . . . that [MOHELA] could be considered an arm of the state." *Id.* at 797. As the court pointed out, the *Biden* majority and dissent both noted that "a public corporation can count as part of the State for some reasons but not 'other purposes.'" *Id.* (citing *Biden*, 143 S. Ct. at 2368 n.3, 2390 n.1). In fact, as the Tenth Circuit pointed out, the Supreme Court relied on *Lebron v. National Railroad Passenger Corp.*, 513 U.S. 374 (1995), where the Court had concluded that Amtrak was an instrumentality of the state for purposes of First Amendment compliance, but it did not share in the United States' sovereign immunity. *Biden*, 143 S. Ct. at 492; *see also Lebron*, 513 U.S. at 392.

While *Good* is not binding on this Court, the Court finds its reasoning persuasive. *Biden* is indeed relevant to show that MOHELA and Missouri are interconnected. The Court in *Biden* noted that: (1) the State of Missouri established MOHELA to perform the "essential public function" of helping Missouri students access education loans; (2) MOHELA is subject to the State's supervision and control; (3) MOHELA's Board consists of two state officials and five members appointed by the Governor and approved by the state senate; (4) the Governor has authority to remove board members; (5) MOHELA must provide annual financial reports to the Missouri Department of Education and is directly answerable to the State; and (6) the State sets the terms of its existence and dissolution. *Biden*, 143 S. Ct. at 2366. And, the Court found that "harm to MOHELA is

also a harm to Missouri," since MOHELA's profits help fund education. *Id.* These findings all relate to MOHELA's interconnectedness and play a role in this Court's arm-of-the-state analysis. But, as the Court in *Biden* pointed out, an entity may be an instrumentality of the state "for some reasons, but not for other purposes." *Id.* at 2368 n.3. Thus, to determine whether MOHELA and Missouri are so interconnected that the state's sovereign immunity extends to MOHELA, the Court must conduct a separate analysis.

### b. The Arm-of-the-State Test

The Sixth Circuit uses a four-factor test to determine whether an entity is considered a part of the state for sovereign immunity purposes. *Embry v. Kotlarsic*, No. 22-4027, 2023 WL 4287190, at *1 (6th Cir. June 30, 2023). This "Arm of the State" test examines: (1) the state's potential liability for a judgment against the entity; (2) the language by which the state describes the entity and the degree of state control and veto power over the entity's actions; (3) whether state officials control membership for the entity's leadership; and (4) the extent to which the entity falls within the traditional purview of the state government. *Id.* The Court will analyze each factor in turn.

#### i. State's Potential Liability

The first factor examines the state's "potential legal liability for the judgment, not whether the state treasury will pay for the judgment." *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 775 (6th Cir. 2015). Thus, direct liability is not required. *Id.* This factor is the "foremost factor" in determining whether an entity is an arm of the state. *Id.*

MOHELA argues that Missouri has potential legal liability here, citing the *Biden* Court's finding that "financial harm to MOHELA constitutes harm to the State of

9

Missouri." (Motion, Doc. 13, Pg. ID 56.) In *Biden*, the Court held that the student loan program "harms MOHELA in the performance of its public function and so directly harms the State that created and controls MOHELA." 143 S. Ct. at 2368. MOHELA argues that, likewise, any judgment against MOHELA would "necessarily harm the State of Missouri." (Motion, Doc. 13, Pg. ID 57.) In support of this argument, MOHELA points out that the statute creating the entity "directed MOHELA to fund Missouri college campus building projects," and that MOHELA has funded and currently funds "State scholarships and grants." *Id.* MOHELA also established and funds the Missouri Scholarship and Loan Foundation. *Id.* In total, MOHELA funds roughly $530 million in educational programs. *Id.* As Missouri relies heavily on MOHELA to help fund higher education in the state, MOHELA argues that a judgment against it would potentially impact the state treasury. *Id.*

MOHELA also points to pre-*Biden* decisions in which courts found potential liability for Missouri from judgments against MOHELA. (Motion, Doc. 13, Pg. ID 57-58.) In *Gowens v. Capella Univ., Inc.*, 2020 WL 10180669, at *1 (N.D. Ala. June 1, 2020), the court concluded that a judgment against MOHELA may have a practical, not legal, impact on Missouri, because an adverse judgment could "impair MOHELA's obligation to contribute millions" to the state programs. The Eighth Circuit similarly found that "financial impact on MOHELA . . . threatens to independently impact Missouri," by preventing or delaying its contributions to Missouri's education funds. *Nebraska v. Biden*, 52 F.4th 1044, 1047 (8th Cir. 2022). Thus, according to MOHELA, the potential financial injury that a judgment against MOHELA could cause Missouri makes Missouri

potentially liable for that judgment.

In response, Plaintiff cites to *Pellegrino*, noting that when MOHELA was established, "its revenues and liabilities were completely independent from the state." (Response, Doc. 26, Pg. ID 119-20; *Pellegrino*, 709 F. Supp.3d at 214.) Therefore, Missouri would not be legally liable for a judgment against MOHELA. (Response, Doc. 26, Pg. ID 119.) MOHELA replies that direct state liability is not required for sovereign immunity in the Sixth Circuit. (Reply, Doc. 29, Pg. ID 150-51.) But, the Supreme Court described the inquiry to find potential liability as such:

> The proper focus is not on the use of profits or surplus, but rather is on losses and debts. If the expenditures of the enterprise exceed receipts, is the State in fact obligated to bear and pay the resulting indebtedness of the enterprise? When the answer is "No" — both legally and practically — then the Eleventh Amendment's core concern is not implicated.

*Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 51 (1994).

Notably, Missouri law provides that all of MOHELA's expenses are only payable from funds it attains itself, and MOHELA cannot incur any liability to be repaid by the state's general revenues. Mo. Rev. Stat. § 173.420. The only exception to this limit was that MOHELA could borrow from the state to cover operating expenses until MOHELA had built revenue from the funds it created. Mo. Rev. Stat. § 173.420. This provision makes clear that, aside from MOHELA's start-up costs, Missouri is in fact not "obligated to bear and pay the resulting indebtedness" of MOHELA. Now that it has access to the revenues it builds, MOHELA cannot take money from the state's general revenue to cover any deficit. The first factor thus weighs against sovereign immunity. But, this determination is not dispositive if the remaining three factors "far outweigh the first factor." *Guertin v.*

11

*State*, 912 F.3d 907, 937 (6th Cir. 2019) (quotation omitted).

### ii. The Degree of State Control

The second factor in the arm-of-the-state test involves four considerations: (1) how state statutes refer to the entity; (2) how state courts refer to the entity; (3) the degree of state control over the entity; and (4) the state's veto power over the entity's actions. *Kreipke*, 807 F.3d at 777. MOHELA points out that Missouri law "weighs decidedly in favor of MOHELA's position." (Motion, Doc. 13, Pg. ID 59.) Missouri law declares MOHELA to be "performing a public function and to be a separate public instrumentality of the state." (*Id.*; *see also* Mo. Rev. Stat. § 173.415, 173.360.) The Court agrees that this statutory language favors MOHELA'S status as an arm of the state.

MOHELA also points to Missouri's control over its existence, including its "leadership, its assignment to a state agency, its financial requirements, and its oversight, as well as public meeting requirements." (Motion, Doc. 13, Pg. ID 59.) Indeed, as the Court in *Biden* noted, MOHELA is governed by state officials and state appointees, the governor has sole authority to remove its board members, it reports to the State, and it can be dissolved only by the State. 143 S. Ct. at 2366.

In her Response, Plaintiff contends that the *Pellegrino* court and other district courts have noted MOHELA's autonomy. (Response, Doc. 26, Pg. ID 120.) These cases found that MOHELA can sue and be sued, enter into contracts, and purchase and sell property. *Pellegrino*, 709 F. Supp.3d at 216-17; *Perkins v. Equifax Info. Servs.*, SA-19-CA-1281, 2020 WL 13120600, at *3-4 (W.D. Tex. May 1, 2020). Plaintiff also argues that the state has "no veto power" over MOHELA's everyday activities. (Response, Doc. 26, Pg.

12

ID 120.) But, as MOHELA points out in its Reply, Plaintiff fails to address Missouri's clearly delineated control over the existence and governance of MOHELA, as evident both in the statutory language creating MOHELA and the degree of involvement Missouri officials have in the entity. (Reply, Doc. 29, Pg. ID 152.) In *Biden*, the Supreme Court came to the same conclusion, stating that MOHELA is "subject to the State's supervision and control[,]" is "governed by Missouri," and is "answerable to Missouri." 143 S. Ct. at 2366, 2375. As the Supreme Court put it, MOHELA is "directly answerable to the state." *Id.* These characteristics cause the second factor to weigh heavily in favor of MOHELA as an arm of the state.

### iii. State Official Control over Membership and Leadership

The next factor considers "whether state or local officials appoint the members of [MOHELA]'s Board." *Kreipke*, 807 F.3d at 778. As stated above, and as the Supreme Court noted in *Biden*, the seven-person Board of MOHELA consists of five members appointed directly by the governor, and the two remaining members are state appointees from other Missouri state organizations. *See Biden*, 143 S. Ct. at 2366; *see also* Mo. Rev. Stat. § 173.360. And, as MOHELA restates in its Motion, the governor has the sole power to remove any board member for cause.

The Sixth Circuit has found that, where an entity's board consists of state-elected or appointed members, the third factor supports the entity's status as an arm of the state. *Ernst v. Rising*, 427 F.3d 351, 360 (6th Cir. 2005) (finding that the third factor weighed in favor of sovereign immunity for the entity where five members were appointed by the governor and two were state officials); *see also Kreipke*, 807 F.3d at 778-79. Similarly,

13

MOHELA's board consists entirely of either members directly appointed by the governor, or members from other state-appointed official positions. And, Plaintiff does not rebut the state's control over MOHELA's board. (*See* Response, Doc. 26, Pg. ID 120; Reply, Doc. 29, Pg. ID 153.) Thus, the third factor weighs heavily in favor of MOHELA as an arm of the state.

### iv. Entity's Function within Traditional Purview of the State

Finally, the Court addresses the degree to which MOHELA's operations fall in line with "a traditional state function," over a local one. *Ernst*, 427 F.3d at 361. MOHELA points to the statutory language, which states that its function is to "support the efforts of public colleges and universities to create and fund capital projects," and support efforts of the Missouri technology corporation's work in assisting and innovating the technology of colleges and universities. (Motion, Doc. 13, Pg. ID 62; *see also* Mo. Rev. Stat. § 173.360.) MOHELA's statutory purpose is to "assure that all eligible postsecondary education students have access to student loans that are guaranteed or insured, or both." (Motion, Doc. 13, Pg. ID 62; *see also* Mo. Rev. Stat. § 173.360.) Further, Missouri statute recognizes MOHELA "as an important part of state policy." (Motion, Doc. 13, Pg. ID 62 (citing Mo. Rev. Stat. § 173.095.)) As MOHELA reiterates, Missouri law makes clear that MOHELA's function is a state one, supporting state colleges, state policy, and generally falling within the purview of Missouri's government. In its Response, Plaintiff does not argue otherwise. (*See* Response, Doc. 26; Reply, Doc. 29, Pg. ID 154.) Therefore, the fourth factor falls heavily in favor of MOHELA as an arm of the state.

\* \* \*

Although the first factor is the foremost factor in the Sixth Circuit's arm-of-the-state test, it can be overcome when the other three factors "far outweigh" the first factor's determination. *See Guertin v. State*, 912 F.3d 907, 937 (6th Cir. 2019) (quotation omitted). Here, the first factor weighs against finding MOHELA as an arm of Missouri. But, the remaining factors heavily outweigh the first. And, the Supreme Court's reasoning in *Biden*, while not dispositive of the Eleventh Amendment analysis, remains highly relevant in determining MOHELA's status as an arm of the state. Therefore, MOHELA is an arm of the state of Missouri and is entitled to sovereign immunity under the Eleventh Amendment.

## CONCLUSION

For these reasons, the Court **ORDERS** the following:

1. USDE's Motion to Dismiss (Doc. 35) is **GRANTED**;

2. Plaintiff's claim against USDE is **DISMISSED WITHOUT PREJUDICE**;

3. MOHELA's Motion to Dismiss (Doc. 13) is **GRANTED**; and

4. Plaintiff's claims against MOHELA are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: *[signature]*
JUDGE MATTHEW W. McFARLAND

15